No. 37 and No. 39 Attorney St., Incorporated, Respondent, *v.* Julius Kirshbaum, Appellant.

First Department, January 24, 1941.

*Hiram S. Gans* of counsel [*C. Arthur Jensen* with him on the brief; *Joseph Gans*, attorney], for the appellant.

*Elliot W. Isaacson* of counsel [*Arthur M. Becker*, attorney], for the respondent.

Dore, J. The defendant appeals from a judgment in plaintiff's favor for the sum of $38,204.93, entered on confirmation of the report of an official referee appointed to hear and report. The judgment was entered in an action requiring defendant to account for rents collected by him between January, 1927, and October, 1932, of properties owned by plaintiff corporation and previously owned by defendant's father, Marks Kirshbaum. From a prior order, referring all issues to an official referee to hear and report, defendant had previously appealed. By order of this court that order of reference was affirmed. (*No. 37 and No. 39 Attorney St., Inc., v. Kirshbaum*, 252 App. Div. 725.) Having already been reviewed (Civ. Prac. Act, § 580), defendant's present appeal from the order directing a reference is dismissed. Defendant as a fiduciary was obliged to account, and, in any event, he filed two accounts before the referee. Accordingly, on this appeal we review the judgment appealed from.

Defendant, Julius Kirshbaum, eldest son of Marks Kirshbaum, hereinafter sometimes referred to as "the deceased," had assisted his father for upwards of thirty years in the management of the real estate in question, up to the time of the deceased's death, collecting rents and paying bills, not merely for expenses in connection with the operation of the real estate, but, at his father's direction, for expenses in connection with certain of deceased's children, including payments for an incompetent daughter in an institution, and also the father's hospital and doctor's bills. Throughout the whole of this long period and up to the death of deceased, no claim was made against defendant for wrongdoing in connection with the management of the properties. After the father's death a series of litigations began.

The record establishes that the corporation was the mere *alter ego* of the deceased who owned it. The deceased conducted his real estate business as he had before incorporation. Rents and income were deposited in his private bank account and no corporate bank account was opened. The corporation failed to pay taxes, its charter was revoked, and it was dissolved for such failure in 1929. Deceased, however, did not transfer to himself title to the four properties, so that when he died intestate on April 1, 1932, the properties still stood in the name of the defunct corporation. The administrator of the deceased's estate caused the corporation to be revived by a special act of the Legislature (Laws of 1933, chap. 522). This action was commenced in the name of the corporation against defendant for an accounting of the rents and proceeds of the property.

The referee held about five hearings during a period of about a year. The referee's report was filed on February 23, 1939, at which time the stenographic minutes had not been transcribed. Plaintiff moved for confirmation of the report. Special Term declined to consider the report until after the minutes were transcribed. The stenographic minutes were finally transcribed and the Special Term thereafter confirmed the report in all respects and entered the judgment appealed from. This judgment embraces surcharges in the total sum of $27,144.69, interest in the sum of $10,812.63, and costs as taxed, constituting a very large judgment in plaintiff's favor of $38,204.93.

The accounting divides itself into three periods:

(1) From January 1, 1927, to October 1, 1927;

(2) From October 1, 1927, to the death of the deceased father on April 1, 1932;

(3) From April 1, 1932, to October 1, 1932.

On a review of the present record, consisting of the stenographic minutes and exhibits, we find numerous errors, and we also find it well nigh impossible to make a satisfactory determination of how the referee reached many of the substantial items of surcharge.

Thus the present record establishes the receipt and deposit by the appellant's father of rents amounting to $4,040. Of this amount the appellant was credited with the sum of only $1,320, leaving a balance of $2,720 to which he is entitled as a further credit. He is also clearly entitled to credit in full at least for items 5, 6, 7, 9, 10, 11, 14, 17, 18, 27, 34 and 92, amounting in the aggregate to $594.30. Those items relate to expenditures incurred in the maintenance and operation of the buildings owned by the plaintiff corporation.

There are other items that appear to be erroneous.

Defendant was directed to prepare and file his first accounting within a very short time, although it went back ten years and covered multitudinous details involved in the collection of numerous small amounts of rent from four tenement houses and the expenses for repairs and other disbursements. In connection therewith, defendant stated that a bakery in 37 Attorney street was occupied in April, May and June, 1927. When the gas records were later produced, on the basis of which many of the items of surcharges were made, it apparently appeared that gas had not been supplied in that store until the end of June, 1927. Nevertheless, the three months' rent for this bakery, totaling $1,950, is charged against defendant. On this record, that item should not have been charged.

Credit for certain payments received by children and grandchildren of the deceased, as evidenced by canceled checks, was disallowed. Although the checks did not name the donees, there was *prima facie* evidence of the disbursements to children and grandchildren of the deceased, corroborated by the undisputed fact that deceased continually contributed to such persons out of the proceeds of the rents from the corporate properties. The claimed recipients were apparently available but offered no testimony that the payments alleged to have been made were not in fact made. On this record we think the official referee erred in disallowing such claimed payments in the absence of proof showing they were not received.

Voluminous gas company records were used as a basis for numerous items of surcharge. Plaintiff's brief not only fails to give a single reference to the stenographic minutes but makes no effort whatever to show how these gas records specifically support the precise figures found in any particular item of surcharge.

Forty-three separate items designated as alleged additional rents collected but not included in the account, total $18,406. Apparently this surcharge was largely based upon the gas company records and inferences drawn therefrom. The dates, the amount of the respective monthly rental used in the computation of each item, and the relevancy of the gas company reports as supporting evidence for the rentals surcharged should be shown to permit adequate review.

It is impossible to determine what formula the referee used to arrive at the allowance relating to item 30, the McKenzie account.

There are other errors on which it is unnecessary to comment, as they are not likely to recur on a retrial. In our opinion, a rehearing is required to do justice between these parties. All proper disbursements made in connection with the properties, as well as all disbursements made out of rent proceeds at the direction of the deceased father for the benefit of his relatives, if properly established, should be credited to defendant.

Accordingly, the judgment appealed from should be reversed and the matter remanded for a rehearing.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed and the matter remanded for a rehearing. Appeal from order dismissed. Settle order on notice.